IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THOMAS FRIZZELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08-3147 |
| | ) |
| CARL SZABO and SANGAMON | ) |
| COUNTY SHERIFF'S OFFICE, | ) |
| | ) |
| Defendants. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants Carl Szabo and Sangamon County Sheriff's Office's Motion for Summary Judgment (d/e 20) (Motion). For the reasons set forth below, the Motion is denied.

## STATEMENT OF FACTS

The parties dispute many material facts in this case. For purposes of the Motion, the Court must view the evidence in the light most favorable to Plaintiff Thomas Frizzell. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The Court does so only for purposes of this Motion and acknowledges that the Defendants dispute many of the facts recited below.

On November 28, 2006, at approximately 5:54 p.m., Frizzell was driving to work at the Lowe's store located on North Dirksen Avenue in Springfield, Illinois. Frizzell was wearing his seatbelt and was not speeding. Motion, Exhibit 1, Deposition of Thomas Frizzell, at 38, 48. Frizzell pulled into the parking lot, parked, exited his car, and started to walk briskly to the store. He was in a hurry because his shift started at 6:00 p.m., and he needed to clock in before that time. Id., at 61.

As Frizzell was parking, Defendant Deputy Sheriff Carl Szabo drove his Sangamon County Sheriff's Office squad car onto the Lowe's parking lot. Szabo started yelling out his car window. Frizzell heard Szabo yelling, but did not know that Szabo was yelling at him. Szabo then used his radio as a public address system to announce that a suspicious black male was in the Lowe's parking lot. Frizzell knew that Szabo must have been talking about him, but he did not know why. Szabo maneuvered his squad car between Frizzell and the Lowe's building. Frizzell went around the squad car and continued toward the store. Szabo told Frizzell that he was being stopped for a seatbelt violation. Frizzell knew that Szabo was ordering him to stop. Frizzell told Szabo that he would come back out after he clocked in. Frizzell pried open the exit door to enter the store. This was his

2

standard practice to get to the time clock as quickly as possible. Motion, Statements of Undisputed Facts, ¶¶ 8, 14, 20, 21, 23, 24, 25, 26, 27, 28, 30; Frizzell Deposition, 63, 67-68, 74-75.[1]

Szabo exited the squad car and followed Frizzell. Szabo grabbed Frizzell's wrist as Frizzell was going through the exit door. Frizzell pulled out of Szabo's grasp. Frizzell entered the Lowe's foyer, and Szabo followed him. Szabo ordered Frizzell to stop. Frizzell told Szabo he would come back and would bring a manager to verify that he worked at Lowe's. Frizzell turned to go into the store. Szabo then shot Frizzell with a taser. The taser immobilized Frizzell, and he fell to the floor on his back. The prongs from the taser remained in Frizzell's back, connected to the taser weapon by wires. Szabo ordered Frizzell to roll over on his stomach. Frizzell could not because he was immobilized from the electrical shock emitted from the taser. Szabo reactivated the taser four more times, shocking Frizzell each time, because Frizzell did not roll over. Eventually, Szabo handcuffed Frizzell and took him into custody. Szabo sprayed mace in Frizzell's face after he was handcuffed. Frizzell was charged with offenses that included

---

[1]The Court only relies on statements of undisputed fact that the parties agree are undisputed.

3

striking Szabo and a seatbelt violation.  Frizzell was found not guilty on all charges.  Motion, Statements of Undisputed Facts, ¶¶ 31, 32, 34, 37, 38, 39, 44, 47; Frizzell Deposition, at 74, 83-84, 86, 88-91, 95-96, 109-10, 117.

Frizzell then brought this action under 42 U.S.C. § 1983 alleging false arrest and use of excessive force in violation of Frizzell's Fourth Amendment rights.  Complaint (d/e 1).  Szabo counterclaimed for battery.  Answer to Complaint/Counterclaim (d/e 7).  Szabo states that Frizzell struck Szabo during the altercation.  Motion, Exhibit 2, Deposition of Carl Szabo, at 78.  Frizzell denies that he struck Szabo.  Frizzell Deposition, at 78.

## ANALYSIS

The Defendants now move for summary judgment on Frizzell's claims.  At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to Frizzell.  Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants.  Anderson, 477 U.S. at 255.  Once the Defendants have met their burden, Frizzell must present evidence to show that issues of fact

4

remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, the factual disputes preclude summary judgment.

Frizzell has a constitutional right, under the Fourth and Fourteenth Amendments, to be free from unreasonable searches and seizures. Szabo sought to stop Frizzell without a warrant. Szabo could do so constitutionally only if he had probable cause to arrest Frizzell or a reasonable articulable suspicion to detain Frizzell to conduct an investigative stop. Terry v. Ohio, 392 U.S. 1, 21 (1968); Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). Szabo states that he had probable cause to arrest Frizzell for driving while not wearing his seatbelt. Probable cause exists:

> [W]hen the facts and circumstances within [the police officer's] knowledge and of which [he has] reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense. The court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer.

Mustafa, 442 F.3d at 547 (internal citations and quotations omitted). In

this case, Frizzell states that he was wearing his seatbelt. For purposes of the Motion, the Court must assume that Frizzell's version of the events is true. The reasonable person in Szabo's position, thus, would have observed Frizzell driving while wearing his seatbelt. The reasonable person would not have had probable cause to arrest Frizzell for driving without wearing a seatbelt. The evidence, viewed favorably to Frizzell, therefore, supports Frizzell's claim that Szabo arrested Frizzell without probable cause. Szabo disputes Frizzell's claim that Frizzell was wearing his seatbelt. This dispute only creates an issue of fact for the jury. Szabo's request for summary judgment on the false arrest claim is denied.

The request for summary judgment on the excessive force claim is also denied. Excessive force claims in the context of an arrest are analyzed under a standard of objective reasonableness under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). The Supreme Court stated that the finder of fact must evaluate the particular circumstances to determine the reasonableness of the force:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake.

Id., at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). When viewed favorably to Frizzell, the government had no interest at stake in Szabo making an unconstitutional arrest, and Frizzell had a clear constitutional interest in being free from an unconstitutional arrest. Frizzell also denies striking Szabo, or otherwise threatening him physically. Szabo, thus, had no interest in using force to protect himself under the circumstances. Szabo's decision to shock Frizzell five times to effectuate an unconstitutional arrest, and then to spray mace in Frizzell's face while Frizzell was handcuffed, was excessive based on Frizzell's version of the events. The Defendants, again, dispute Frizzell's version of events, but that only demonstrates that issues of fact exist. The request for summary judgment is denied.

The Defendants argue that even if Szabo did not have probable cause to arrest Frizzell for the seatbelt violation, Szabo had probable cause to arrest Frizzell, and the right to use force against Frizzell, because Frizzell refused to comply with Szabo's orders to stop and because Frizzell pulled away from Szabo's grasp. This argument would have merit only if Szabo had a valid basis to order Frizzell to stop. When the evidence is viewed favorably to Frizzell, Szabo had no basis to order Frizzell to stop; he lacked

probable cause to arrest and he lacked a reasonable articulable suspicion to conduct an investigative stop. Frizzell was, thus, only exercising his rights to be free from an unreasonable seizure when he ignored or resisted Szabo's unconstitutional conduct. Szabo's alleged persistence in abusing his power did not give him the right to abuse his power more by using force on Frizzell or by arresting Frizzell for resisting Szabo's alleged illegal conduct.

The cases that the Defendants cite to support their position are not persuasive. The Defendants cite <u>Dye v. Wargo</u> and <u>Sherrod v. Berry</u> for the proposition that an officer is entitled to use force against a person that is resisting an illegal arrest. <u>Dye</u>, 253 F.3d 296 (7th Cir. 2001); <u>Sherrod</u>, 856 F.2d 802, 805 (7th Cir. 1988). Neither case so holds. In the <u>Sherrod</u> case, the officers approached the vehicle in which Sherrod was riding to arrest the other occupant of the vehicle. The other occupant was wanted for robbery. <u>Sherrod</u>, 856 F.2d at 805. The officers, therefore, had a proper basis to detain Sherrod's vehicle initially. Here, Szabo did not have a proper basis to stop Frizzell, based on Frizzell's version of the events. In the <u>Sherrod</u> case, Sherrod made a move that threatened the officers' safety, and one of the officer shot him. Based on Frizzell's version of the events, Frizzell did not threaten Szabo physically. Finally, the Court of Appeals did not decide

whether the force used was excessive in Sherrod, but remanded for a new trial. Sherrod, 856 F.2d at 805. The Sherrod case does not apply.

The circumstances of this case are somewhat similar to the situation in Dye. The officer in Dye claimed that he attempted to stop Anthony Dye's vehicle for speeding, but Dye drove away, and ultimately, started to flee on foot. The officer had a K-9 dog with him. At the officer's direction, the K-9 chased down Dye and stopped Dye from fleeing by biting him in the leg. The officer said that Dye then started shooting at the officer. The officer returned fire, wounding Dye. Dye claimed he was not speeding and never pulled a weapon. He claimed that the officer used excessive force by siccing the K-9 dog on him and by shooting him without provocation. Dye, 253 F.3d at 297-98.

The Dye majority characterized Dye's version of events as "a clear example of excessive force in violation of the fourth amendment." Id., at 298. The Dye dissent stated that all of the members of the Court agreed that the officer "used constitutionally excessive force against Anthony Dye, when we take the contested facts in the light most favorable to Dye." Id., at 302-03. Dye lost at summary judgment, however, because he admitted some of the material facts when he pleaded guilty to the charges brought

against him and because he signed a release. Id., at 298, 302. Here, Frizzell was found not guilty of all charges and did not sign a release. Unlike the plaintiff in Dye, therefore, Frizzell may proceed.

Last, Szabo argues for summary judgment on his defense of qualified immunity. Szabo is entitled to qualified immunity unless Frizzell can point to clearly established constitutional law existing at the time of the incident that put Szabo on notice that his conduct was unconstitutional. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The controlling constitutional principles were clearly established at the time of this incident. Szabo could only arrest or detain Frizzell if he had probable cause or a reasonable articulable suspicion. Terry, 392 U.S. at 21; Mustafa, 442 F.3d at 547. When viewed favorably to Frizzell, the evidence indicates that Szabo had neither. Szabo is not entitled to qualified immunity on the false arrest claim. Because Szabo had no right to arrest or detain Frizzell, there was no governmental interest at stake to justify Szabo's use of force, let alone the use of a taser five times, and then mace. See Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996). Szabo is not entitled to qualified immunity on the excessive force claim.

THEREFORE, Defendants' Motion for Summary Judgment (d/e 20)

is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: March 25, 2010

FOR THE COURT:

        s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE